

James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
      lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
James N. Hood as Liquidating Trustee of the
Oceantrade Corporation Liquidating Trust

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JAMES N. HOOD AS LIQUIDATING TRUSTEE OF THE OCEANTRADE CORPORATION LIQUIDATING TRUST,<br><br>      Plaintiff,<br><br>      -against-<br><br>C&SHIPPING CO., LTD. a/k/a C & SHIPPING CO., LTD. f/k/a SEVEN MOUNTAINS SHIPPING CO., LTD. a/k/a SEVEN MOUNTAIN SHIPPING CO., LTD.,<br><br>      Defendant. | 08 Civ.   (   )<br><br>**VERIFIED COMPLAINT** |

Plaintiff, James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust ("Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against defendant, C&Shipping Co., Ltd. a/k/a C & Shipping Co., Ltd. f/k/a

Seven Mountains Shipping Co., Ltd. a/k/a Seven Mountain Shipping Co., Ltd. ("Defendant"), alleges, upon information and belief, as follows:

1.    This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    At all material times herein, James N. Hood as Liquidating Trustee for the Oceantrade Corporation Liquidating Trust maintained and maintains an address at 285 Highland Avenue, Norwalk, CT, 06854-4017.

3.    On or about October 15, 2005, Oceantrade Corporation ("Oceantrade") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

4.    On or about October 4, 2007, Oceantrade filed a Chapter 11 Plan of Liquidation ("Plan"), which was confirmed by order of the Bankruptcy Court for the Southern District of New York on December 4, 2007 ("Confirmation Order").

5.    Pursuant to the Plan and the Confirmation Order, James N. Hood was appointed as Liquidating Trustee, with full authority to assert, prosecute, and settle all causes of action including, but not limited to, causes of action on behalf of Oceantrade against third parties relating to accounts receivable.

6.    At all times material herein, Oceantrade was a business entity organized and existing under the laws of the Marshal Islands with a principal place of business at c/o Bulkamerica Corporation, 137 Rowayton Avenue, Rowayton, Connecticut, 06853.

7.      At all times material herein, Bulkamerica Corporation ("Bulkamerica") was agent for Oceantrade under an agency agreement dated August 31, 2001 and engaged in business transactions on behalf of Oceantrade pursuant to that agreement, including the transaction herein.

8.      Upon information and belief, at all times material herein, Defendant was a business entity organized and existing under the laws of a foreign country with a principal place of business at 16th Floor, Changgyo Blg., 1, Changgyo-dong Chung-gu, Seoul, Keoul, 100-760, Korea (South).

9.      Upon information and belief, Seven Mountains Shipping Co., Ltd. is now known as and does business as C&Shipping Co., Ltd. ("CNS").    The CNS website, www.cn-shipping.co.kr/eng/, states that in July 2006, it was "renamed  from Seven Mountain Shipping to C&Shipping Co."  Upon information and belief, "Seven Mountains Shipping Co., Ltd." and "Seven Mountain Shipping Co., Ltd." were one and the same entity ("Seven Mountain").

10.      On or about November 4, 2003, Seven Mountain, as disponent owner, chartered the M/V PRABHU PUNI ("Vessel") to Oceantrade, as charterer, for a minimum period of six months to a maximum period of eight months ("Charter").   A true and correct copy of the Charter is attached hereto as Exhibit 1.

11.      On or about January 20, 2004 Oceantrade sublet the Vessel to Samsun Line Corporation ("Samsun") for a period from June 15, 2004 minimum to July 28, 2004 maximum. Samsun subsequently sublet the Vessel to Armada Bulk Carriers.

12.      On or about June 1, 2004 Oceantrade was advised by Samsun that the Vessel's grabs were out of order and not in working condition and that Samsun put the charges pertaining to hire of grabs on to Oceantrade's account, "the same would be  deducted from next hire payment, and that all time lost due to grabs breakdown would be considered as off-hire

duration." A true and correct copy of the message received from Samsun advising Oceantrade of the malfunctioning grabs and Samsun's intentions with respect thereto is attached hereto as Exhibit 2.

13.   Samsun subsequently made deductions from the hire due Oceantrade for the grab malfunction, for bunkers consumed while offhire, and for the hire of shore grabs on a basis of $1.00 per metric ton discharged by grabs. A true and correct copy of Samsun's Hire Statement setting forth these deductions is attached hereto as Exhibit 3.

14.   Oceantrade deducted $65,782.58 from hire payable to Seven Mountain accordingly.

15.   Oceantrade issued its Revised Preliminary Hire Statement on July 1, 2004 showing a balance in Oceantrade's favour of $76,866.15. A true and correct copy of the Revised Preliminary Final Hire Statement is attached hereto as Exhibit 4.

16.   Despite Oceantrade's request, Defendant has refused to settle this outstanding balance due Oceantrade.

17.   In accordance with Clauses 17 and 30 of the Charter, Oceantrade's claim for payment of sums due is subject to London arbitration under English law, which Oceantrade will initiate in due course.

18.   Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings.

19.   This cause of action accrued on July 1, 2004, and upon information and belief, it will take until at least December 31, 2008 to arbitrate this matter to its conclusion.

20.   Based on the preceding, as best can now be estimated, Oceantrade's total claim against Defendant is the following:

| A. | On the principal claim: | $76,866.15 |
| B. | Interest at 6.0% from July 1, 2004 to December 31, 2008: | $20,772.81 |
| C. | Costs (arbitrators fees, etc.): | $10,000.00 |
| D. | Attorneys' fees | $40,000.00 |
| | Total Sought: | $147,638.96 |

21.    Defendant is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of C&Shipping Co., Ltd. and/or C & Shipping Co., Ltd.[1] with, upon information and belief, the following financial institutions:  ABN Amro Bank; American Express Bank; Banco Popular; Bank of America, N.A.; Bank of China; Bank Leumi USA; The Bank of New York; BNP Paribas; Calyon Investment Bank; Citibank, N.A.; Commerzbank; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Standard Chartered Bank; Société Générale; UBS AG; Wachovia Bank, N.A.; China Trust Bank; Industrial Bank of Korea; Shin Han Bank; Great Eastern Bank; Nara Bank; United Orient Bank; or any other financial institution within the Southern District of New York.

22.    While all disputes arising out of the Charter are to be arbitrated in London, England, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty Claims of the Federal Rules of Civil Procedure, as well 9 U.S.C. § 8, and is not and cannot be considered a waiver of the parties' agreement to arbitrate.

WHEREFORE, Plaintiff demands judgment as follows:

---

[1] Given C&Shipping's announcement of its company's change of name, the attachment process is not directed at the company's former name.

1.      That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against bank accounts and other property of C&Shipping Co., Ltd. a/k/a C & Shipping Co., Ltd. with the financial institutions noted above in paragraph 21;

2.      That C&Shipping Co., Ltd. a/k/a C & Shipping Co., Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.      That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

4.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

5.      That this Court award Plaintiff's its attorney's fees and costs of this action; and,

6.      That this Court grant James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust, such other and further relief which it may deem just and proper.

Dated: New York, New York
      April 11, 2008

HOLLAND & KNIGHT LLP

By: _____

James H. Hohenstein
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Telefax: (212) 385-9010
E-mail: jim.hohenstein@hklaw.com
           lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
*James N. Hood as Liquidating Trustee*
*of the Oceantrade Corporation*
*Liquidating Trust*

## VERIFICATION

STATE OF NEW YORK            )

                                          :ss.:

COUNTY OF NEW YORK        )

JAMES H. HOHENSTEIN, being duly sworn, deposes and says:

    I am a member of the firm of Holland & Knight LLP, counsel for James N. Hood as Liquidating Trustee of the Oceantrade Corporation Liquidating Trust ("Plaintiff"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Plaintiff and corresponded with Plaintiff regarding this matter. I am authorized by Plaintiff to make this verification, and the reason for my making it as opposed to the Plaintiff is that he is not within the jurisdiction of this Honorable Court.

                                          James H. Hohenstein

Sworn to before me this

_11th_ day of April, 2008

Notary Public

DIALYZ E. MORALES
Notary Public, State Of New York
No. 01MO6059215
Qualified In New York County
Commission Expires June 25, 200_U_

# 5161429_v2

# EXHIBIT 1



# SSY
## SIMPSON SPENCE & YOUNG
### N E W   Y O R K

# 𝕿𝖎𝖒𝖊 𝕮𝖍𝖆𝖗𝖙𝖊𝖗

## SECOND ORIGINAL

GOVERNMENT FORM

*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  𝕿𝖍𝖎𝖘 𝕮𝖍𝖆𝖗𝖙𝖊𝖗 𝕻𝖆𝖗𝖙𝖞, made and concluded in *Stamford, Connecticut* .................... *4th.* day of *November* .................... 19 *2003*

2  Between *SEVEN MOUNTAINS SHIPPING CO., LTD.* ....................

3  Owners of the good *Singapore Flag* .................... ~~Steamship/~~Motorship *"PRABHU PUNI"* .................... of ....................

4  of *25,905.00* ... tons gross register, and *13,656* ............... tons net register, having engines of .................... indicated horse power

5  and with hull, machinery and equipment in a thoroughly efficient state, and classed .................... at

6  .................... of about *53,593/52,569.5* cubic *metres* ~~feet~~ grain bale capacity, and about *43,595 metric* .................... tons of 2240 lbs.

7  deadweight capacity (cargo and bunkers, ~~including fresh water~~ and stores not exceeding *350 metric tons excluding fresh water* ~~one and one-half percent of ship's deadweight capacity~~,

8  ~~allowing a minimum of fifty tons)~~ on a draft of *11.323 metres* ~~feet~~ .................... inches on *salt* ............ Summer freeboard, inclusive of permanent bunkers,

9  which are of the capacity of about ............ tons of fuel, and capable of steaming, fully laden *throughout the currency of this Charter Party,* under good weather

10  conditions ~~about~~ .................... ~~knots on a consumption of about~~ .................... ~~tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,~~

11  now *trading See description (Clause 44) for further information* ....................

12  .................... and *OCEANTRADE CORPORATION* .................... Charterers of the City of *Marshall Islands* .....

13  𝖂𝖎𝖙𝖓𝖊𝖘𝖘𝖊𝖙𝖍, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14  ~~about~~ *Timecharter period of minimum 6 months up to maximum 8 months world wide* trading via *safe port(s). safe berth(s), safe*

15  *anchorage) always afloat always within Institute Warranty Limits* ......... within below mentioned trading limits.

16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17  the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*

18  Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot, safe port, Sea of Marmara or Black Sea, port in*

19  *Charterers' option any time day or night Sundays and holidays included (intention Diliskelesi or Hereke)*

20  ~~in such dock at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~

21  ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her *arrival first loadport of*

22  *this Charter* ~~delivery to be~~ ready to receive *any permissible* cargo *to Independent Surveyors' satisfaction. Should the vessel fail to pass such survey then the vessel to be off-hire from time of failure until the vessel is fully accepted (See also Clause 74) on delivery and throughout the Charter* vessel to be ~~with clean-swept holds and tight,~~ staunch, strong and in every way fitted for the service, having water ballast, *crane* ~~winches and~~

23  donkey boiler with sufficient steam power, or if not equipped with donkey boilers, then other power sufficient to run all the *cranes* ~~winches~~ at one and the same

24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25  dise, ~~including petroleum or its products, in proper containers,~~ excluding *See Clause 37*

26  ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27  ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports *and/or safe places in* ~~British North~~

28  ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

29  ~~Mexico, and/or South America~~ .................... ~~and/or Europe~~

30  ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~

31  ~~October 21st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic;~~

32  *See Trading Exclusions – Clause 65* ....................

33  ....................

34  ....................

35  as the Charterers or their Agents shall direct, on the following conditions:

36  1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew, *and* ~~watchmen other than compulsory,~~ shall pay for the

37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

38  the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment for and during the service.

39  2. That *whilst on hire,* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *Compulsory* Pilotages, Agencies, Commissions,

40  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

41  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42  illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44  of six months or more.

45  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46  Owners to allow them the use of any dunnage and shifting boards *and any other fittings* already aboard vessel. Charterers to have the privilege of using shifting boards

47  for dunnage, they making good any damage thereto.

# SECOND ORIGINAL

48 ~~3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~
49 ~~board the vessel at the current prices in the respective ports; the vessel to be delivered with not less than~~ .................... ~~tons and not more than~~
50 ....................... ~~tons and to be re-delivered with not less than~~ ...................... ~~tons and not more than~~ ...................... ~~tons.~~ *See Clause 35.*

51     4. That the Charterers shall pay for the use and hire of the said Vessel ~~at the rate of~~ *See Clause 71* ..........................................
52 ...................................................... ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~
53 ~~stores, on~~ ...................... ~~summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid, and at
54 and after the same rate for any part of a *day* ~~month;~~ hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55 wear and tear excepted, to the Owners (unless lost) *at on dropping last outward sea pilot any time day or night Sundays and holidays*
56 *included one (1) safe port  Singapore/Japan Range including South Korea, Peoples' Republic of China, Hong Kong, Taiwan,*
*Indonesia, Phillipine Islands, Malaysia, Thailand and in Charterers' option Skaw/Passero Range.* unless otherwise mutually agreed.
Charterers are to give approx *20/15 days approximate*
57 notice of vessels expected date of re-delivery, and probable port *and 10/7/3/2/1 days definite notice.*

58     5. Payment of said hire to be made in New York in cash in United States Currency, *15 days* ~~semi-monthly~~ in advance, and for the last *15 days* ~~half~~
~~month or~~
59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61 hire, or bank guarantee *or deposit*, or on any *fundamental* breach of this Charter Party, the Owners are at liberty to withdraw the vessel from the service
of the Char-
62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~
63 ~~following that on which written notice has been given to Charterers or their Agents before 4 p.m.; but if required by Charterers, they~~
64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67 of such advances.

68     6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *or safe anchorage in port or elsewhere* ~~that~~
~~Charterers or their Agents may~~
69 direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely
70 lie aground. *NAABSA to apply only in Argentina, Brazil, Buena Ventura, Sauda, where it is customary. Vessel not to manoeuvre*
*or shift while safely aground.*

71     7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74 ~~paying Owners~~ ...................... ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75 ~~incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers allowed.*

76     8. That the Captain shall prosecute his voyages with the ~~utmost~~ *due* despatch, and shall render all customary assistance with ship's crew and
77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78 agency; and Charterers are to load, stow, and trim, *and discharge* the cargo at their expense under the supervision of the Captain, who is to sign *or when*
*required by Charterers or their agents to sign on his behalf* Bills of Lading for
79 cargo as presented, *strictly* in conformity with Mate's or ~~Tally Clerk's receipts.~~ *But Charterers agree to remain responsible for any*
*consequences should these not conform with mates' receipts.*

80     9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82     10. That the Charterers shall have permission to appoint a Supercargo *subject to lifeboat capacity*, who shall accompany the vessel and see that
voyages are prosecuted
83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84 rate of *U.S. $10.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
85 Clerks, Stevedore's Foreman, etc., Charterers *to compensate Owners lumpsum U.S. $1,250 monthly or pro-rata in respect of Charterers'*
*victualling, cables and entertainment,* ~~paying at the current rate per meal, for all such victualling.~~

86     11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs, showing the course of the vessel and distance run and the
con-
89 sumption of fuel, *as well as revolutions of main engine and velocity of and direction of wind and sea, all in English language.*

90     12. That the Captain shall use diligence in ~~caring the cargo and for the ventilation of the cargo.~~
91     ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~ ......................................
92 ........................................................................................................................................................................................................
93 ~~on giving written notice thereof to the Owners or their Agents~~ ...................... ~~days previous to the expiration of the first-named term, or any declared option.~~

94     14. That if required by Charterers, time not to commence before *November 24th, 2003* ...................................................... and should vessel
95 not ~~been delivered have given written notice of readiness on or before~~ *December 6th, 2003* ...................... ~~but not later than 4 p.m.~~ Charterers or
96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97     15. That in the event of the loss of time from deficiency *and/or default and/or strike* of crew ~~men~~ or *deficiency* of stores, fire, breakdown or
98 damages to hull, machinery or equipment,
grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost *and all extra directly related expenses may be*
*deducted from the hire*; and if upon the voyage the speed be reduced by
100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
101 thereof, and all extra expenses shall be deducted from the hire.

# SECOND ORIGINAL

102  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
104  Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
105  The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106  purpose of saving life and property.

107  17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons *in London* ~~at New York~~,
108  one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, *and for*
109  the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. *See further arbitration*
*Clause 30.*

110  18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hire* for any amounts due under this Charter, including General Aver-
111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112  deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113  might have priority over the title and interest of the owners in the vessel.

114  19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115  Crew's proportion. General Average shall be adjusted, stated and settled *in London*, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of
116  York-Antwerp Rules *1974 as amended 1994 or any amendments thereto* ~~1924, at such port or place in the United States as may be selected by the~~
117  ~~carrier, and as to matters not provided for by these~~
~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118  ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119  ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120  ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121  ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122  ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123  ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124  ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125  ~~United States money.~~ *Charter Hire not to contribute to General Average.*
126  ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127  ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128  ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129  ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130  ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131  ~~ships belonged to strangers.~~
132  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133  20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
134  cost of replacing same, to be allowed by Owners.

135  ~~21. That as the vessel may be from time to time employed in tropical water during the term of this Charter, Vessel is to be docked at a~~
136  ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137  ~~time of last painting and payment of the hire to be suspended until she is again in proper state for the service.~~
138  *No drydocking during the currency of this Charter except in case of emergency and to maintain class status*
139  _____

140  22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes* ~~derricks~~) capable of handling lifts up to *their maximum*
*capacity in accordance with the Description Clause* three tons, also
141  ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142  ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *power and electric light on deck*
*and in cargo holds sufficient for night work in all holds simultaneously* ~~lantern and oil for~~
143  ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The
144  Charterers to have the use of any gear on board the vessel.

145  23. Vessel to work night and day, if required by Charterers, and all *cranes and grabs* ~~winches~~ to be at Charterers' disposal during loading and
discharging;
146  ~~steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen,~~
147  ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148  ~~port, or labor unions, prevent crew from driving winches,~~ shore *cranemen* ~~Winchmen~~ to be paid by Charterers. In the event of a disabled *crane or cranes*
*and grabs* ~~winch or winches,~~ or
149  insufficient power to operate *crane or cranes and grabs* ~~winches,~~ Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of
time *and extra expenses directly related including standby expenses* occasioned
150  ~~thereby except such a breakdown caused by~~ *Charterers, their agents, servant and any person acting on behalf of Charterers.*

151  24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152  in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;
153  etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the *attached protective* ~~following~~
clauses, ~~both~~
154  ~~of which are to be included in all bills of lading issued hereunder.~~

155  ~~U. S. A. Clause Paramount~~
156  ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
157  ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
158  ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159  ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~
160  ~~Both to Blame Collision Clause~~
161  ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162  ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163  ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

SECOND ORIGINAL

164 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166 ~~owners as part of their claim against the carrying ship or carrier.~~
167  25.  The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging.
170  26.  Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, insurance, crew, *acts of pilots and tugboats* and all other matters, same as when trading for their own account.
172  27.  A commission of *1.25* ~~2 1/2~~ per cent is payable by the Vessel and Owners to
173 *simpson, Spence and Young New York and 1.25% to A1 Chartering Seoul, South Korea.*.....................................
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175  28.  An address commission of *3.75* ~~2 1/2~~ per cent payable to *Charterers* .......................................... on the hire earned and paid under this Charter.

*Rider Clause 29 to 76, both inclusive, are fully incorporated in this Charter Party.*

*O W N E R S*

SEVEN MOUNTAIN SHIPPING CO.,LTD.

.........................................
*Authorized Signature*

*C H A R T E R E R S*
*For and on behalf of Oceantrade*
*as per their written authority:*

*Evan Galanis*
*Simpson, Spence and Young New York*
*AS BROKER ONLY*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:33pm P007

SECOND ORIGINAL

**RIDER CLAUSES TO THE M/V "PRABHU PUNI"**
**OCEANTRADE CORPORATION**
**CHARTER PARTY DATED NOVEMBER 4ᵀᴴ, 2003**



**SSY**
NEW YORK

### CLAUSE 29: ADDITIONAL FITTINGS:

No welding padeyes/partitions inside holds/hatchcovers. Charterers are allowed to weld padeyes only on face-plates of frames inside holds. Padeyes to be removed to Master's satisfaction prior redelivery. However Charterers may leave some padeyes unremoved in consultation with Master but not at places where bulldozer/payloader operations can uproot them.

### CLAUSE 30: ARBITRATION:

This Charter-party shall be governed by English Law.

It is hereby agreed that all claims below US$ 50,000 excluding interest and costs, shall be settled as per LMAA Small Claims Procedure 1989.

### CLAUSE 31: ARREST:

Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel, hire under this Charter-party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as a result of such arrest, and the Owners shall reimburse to the Charterers any direct expenditure which they may incur under this Charter in respect of any period during which by virtue of the operation of the Clause no hire is payable.

This Clause shall not apply should the arrest be caused through any fault on the part of the Charterers or Charterers' Agent and/or servant and/or any person acting on behalf of Charterers.

### CLAUSE 32: ASIAN GYPSY MOTH:

Owners guarantee that the vessel meets all US/Canadian plant and quarantine regulations and has not called any Russian Pacific ports since last 2 years.

Furthermore Owners guarantee that on delivery the vessel is free of any stage of gypsy moth life, be it in the form of egg masses, larvae or live animals. Costs and consequences due to vessel not being able to enter US/Canadian ports or not being passed for loading US/Canadian Authorities on account of gypsy moth infestation to be for Owners' account.

### CLAUSE 33: BILL(S) OF LADING:

Charterers Bill(s) of Lading to be used if required by Charterers.

1

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:34pm  P008/078

## SECOND ORIGINAL
### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



SSY
SIMPSON SPENCE & YOUNG
NEW YORK

### CLAUSE 34: BULLDOZERS:

Charterers to have the option to use the bulldozers in vessel's holds, provided not exceeding the tank top strength.

### CLAUSE 35: BUNKERS:

Bunkers on delivery about 700 MT IFO and about 60 MT MDO. Bunkers on redelivery about same quantity as actually onboard on delivery.

Bunker prices both ends US$ 175 PMT for IFO and US$ 260 PMT for MDO.

Charterers' option to bunker vessel prior delivery provided not interfering with Owners' operations.

Owners on their own account allowed to bunker vessel prior redelivery provided not interfering with Charterers' operations.

No deduction to be made towards galley fuel including fuel used for air conditioning.

Bunkering at Singapore:

If Charterers supply bunkers at Singapore during currency of this Charter same always to be within port limits of Singapore.

### CLAUSE 36: CARGO CLAIMS AND PNI CLUB:

Owners guarantee that the vessel is entered and shall remain entered in a Protection and Indemnity Association, which is a member of the Group of International P&I Clubs, for the duration of this Charter-party. Entry shall include, but not to be limited to ordinary cover for cargo claims.

In case of damage to and/or loss of cargo carried on the vessel in which Owners and/or Charterers' liability could be involved under the terms of this Charter-party, as the case may be, the Owners and/or the Charterers shall be asked to grant time extension for suit in each and every occurrence which should not be unreasonably withheld. The so granted extensions shall not prejudice the ultimate responsibility of both parties. Liability for cargo claims, as between Charterers and Owners, shall be apportioned as specified by the Interclub New York Produce Exchange Agreement effective from 1996.

Owners' P&I Club: STEAMSHIP INSURANCE MANAGEMENT SERVICES LTD, LONDON
Charterers' P&I Club: NORTH OF ENGLAND.

2

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:34pm  P009/076

SECOND ORIGINAL

**RIDER CLAUSES TO THE M/V "PRABHU PUNI"**
**OCEANTRADE CORPORATION**
**CHARTER PARTY DATED NOVEMBER 4TH, 2003**



### CLAUSE 37: CARGO EXCLUSIONS:

LIVESTOCK, MEAT, BONEMEAL, FISHMEAL, HIDES, MAHOGANY, TIMBER, BULK AND BAGGED RICE, SUNFLOWER SEEDS, ALL KINDS OF EXPELLERS, TOBACCO EXTRACTS, COTTON, COTTONSEED, CASTOR BEANS, COPRA, ACIDS, SAWDUST, SULPHUR, BORAX, CREOSOTED GOODS, HYDROCHLORIDE, CALCIUM HYDROCHLORIDE, CALCIUM HYPOCHLORITE, CHLORINATED LIME, LIME CHLORIDE NAPTHA, ALL KINDS OF SULPHATES/SULPHITES/SULPHIDES, PETROLEUM OR ITS PRODUCTS, PETCOKE, PITCH, PENCIL PITCH, TAR, ASPHALT, NAPHTA, CALCIUM CARBIDE, AMMONIUM NITRATE EXCEPT FERTILIZER GRADE (APPENDIX C), FERROSILICON, FERROPHOSPHORUS, SILICOMANGANESE, BAGGED CEMENT, CEMENT CLINKER, AGGREGATES, LOGS, SALT, SODA ASH, NUCLEAR MATERIALS, NUCLEAR WASTE, RADIO ACTIVE PRODUCTS, COBBLE PLATES, RAILWAY WAGONS, TOXIC WASTE, MOTOR BLOCKS, TURNINGS AND SHAVINGS, SCRAPS OF ANY KIND, DIRECT REDUCED IRON AND PRE-REDUCED IRON, HBI, SPONGE IRON, CONCENTRATES, ALUMINA, MINERAL SANDS, LEAD BROWN COAL BRIQUETTES, RAW ASBESTOS, BLACK POWDER, TNT, BLASTING CAPS, BOMBS (LOADED OR NOT), ARMS AND AMMUNITION, DANGEROUS, HAZARDOUS, EXPLOSIVE, INJURIOUS AND INFLAMMABLE CARGOES, IMO 3,4,5 CARGOES.

IF ANY OF THE PERMISSIBLE CARGOES FALLS IN THE CODE OF SAFE PRACTICE FOR SOLID BULK CARGOES PUBLISHED BY IMO THEN THE SAME BE SHIPPED, CARRIED AND DISCHARGED ALWAYS VESSEL'S DESIGN PERMITTING AND IN ACCORDANCE WITH IMO RECOMMENDATIONS AND LATEST AMENDMENTS.

CHARTERERS TO COMPLY WITH THE SAME AT THEIR TIME RISK AND COST.

STEEL CARGOES TO BE LOADED / LASHED / SECURED AS PER CARGO SECURING MANUAL ON BOARD AS APPROVED BY VESSEL'S FLAG ADMINISTRATION. OWNERS HAVING THE OPTION TO APPOINT A PNI CLUB SURVEYOR TO DETERMINE THE CONDITION OF THE CARGO PRIOR TO SHIPMENT AND REMARKS OF SURVEYOR TO BE INCORPORATED IN M/R AND BILLS OF LADING.

NO CARGO TO BE LOADED ON DECK/HATCHCOVERS. NO WELDING PADEYES/PARTITIONS INSIDE HOLDS/HATCHCOVERS.

SECOND ORIGINAL

## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4TH, 2003



### CLAUSE 37: CONTINUED:

### PETCOKE LOADING PROTECTIVE CLAUSE:

GREEN CALCINED PETCOKE TO BE ALLOWED SUBJECT TO FOLLOWING CLAUSE:

ONLY ONE CARGO OF EITHER 'CALCINED PETCOKE' OR 'GREEN PETCOKE' TO BE LOADED PROVIDED SAME NON HAZARDOUS AND TO BE LOADED IN ACCORDANCE WITH LATEST I.M.O REGULATIONS. SAME NOT TO BE LOADED AS LAST CARGO.

'CODE OF SAFE PRACTICE FOR SOLID BULK CARGOES' (AS AMENDED) AND OTHER APPLICABLE CODE WITHOUT PREJUDICE TO ANY CARGO EXCLUSIONS STATED ELSEWHERE IN THIS CHARTER-PARTY. CHARTERERS TO BE ALWAYS RESPONSIBLE FOR COMPLIANCE WITH SUCH CODES.

IN CASE GREEN CALCINED PETCOKE IS LOADED CHARTERERS TO PAY US$ 400.00 EXTRA PER HOLD TOWARDS CLEANING OVER AND ABOVE NORMAL HOLD CLEANING COMPENSATION PAYABLE TO CREW DIRECTLY BY CHARTERERS AS PER INTERMEDIATE HOLD CLEANING CLAUSE 51. IT IS ALSO UNDERSTOOD THAT THE RESPONSIBILITY OF CLEANING OF HOLDS BOTH BEFORE AND AFTER DISCHARGE OF GREEN CALCINED PETCOKE CARGO IS WITHOUT PREJUDICE OF THE TERMS AND CONDITIONS AGREED IN INTERMEDIATE HOLD CLEANING CLAUSE 51.

### CONCENTRATES LOADING PROTECTIVE CLAUSE:

CONCENTRATES ALLOWED UNDER THIS CHARTER-PARTY BUT SAME NOT TO BE LAST CARGO AND FOLLOWING CLAUSE AGREED FOR LOADING CONCENTRATE:

CHARTERERS ARE ALLOWED TO LOAD CONCENTRATES WITH OWNERS' PROTECTING CLAUSE AS FOLLOWS:

CONCENTRATES TO BE LOADED IN ACCORDANCE WITH I.M.D.G CODE AND CODE OF SAFE PRACTICE FOR LOADING BULK CARGOES PART 2. FOR LOADING CONCENTRATES, THE STOWAGE TO BE WITHIN VESSEL'S STRENGTH, STRESS AND STABILITY AND MASTER'S APPROVAL WHICH NOT TO BE UNREASONABLY WITHHELD AND WHICH TO BE OBTAINED PRIOR LOADING.

ALL NECESSARY SEPARATIONS IF REQUIRED TO BE PROPERLY ERECTED UP TO SURVEYOR'S AND MASTER'S SATISFACTION AS IS CUSTOMARY AT LOADING PORT AT CHARTERERS' TIME AND EXPENSE AND CARGO TO BE LOADED STOWED SEPARATED AND TRIMMED AND DISCHARGED ETC., UP TO I.MO. AND CANADIAN AND/OR BOARD/TRADE REGULATIONS. AT MASTERS REQUEST CHARTERERS TO ALLOW OWNERS TO APPOINT P&I SURVEYOR OR INDEPENDENT SURVEYOR TO SUPERVISE LOADING, STOWING EXECUTION OF SEPARATION ETC., TO SURVEYOR'S AGREEMENT AND MASTER'S SATISFACTION AS IS CUSTOMARY AT LOADING PORT AT CHARTERERS' TIME AND EXPENSE.

4

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:40pm  P011/076

SECOND ORIGINAL

**RIDER CLAUSES TO THE M/V "PRABHU PUNI"**
**OCEANTRADE CORPORATION**
**CHARTER PARTY DATED NOVEMBER 4TH, 2003**



**CLAUSE 37: CONTINUED:**

BEFORE LOADING CONCENTRATES CHARTERERS TO SUPPLY VESSEL SHIPPER'S CERTIFICATE OF FLOW MOISTURE CONTENT EVIDENCING CARGO COMPLIANCE WITH I.M.O REGULATIONS.

BULK CEMENT ALLOWED SUBJECT TO FOLLOWING PROTECTING CLAUSE.

"CHARTERERS HAVE THE OPTION TO LOAD 1 CARGO OF BULK CEMENT DURING THE CURRENCY OF THIS CHARTER PARTY BUT SAME NOT TO BE CARRIED AS LAST CARGO PRIOR TO REDELIVERY.

CEMENT TO BE LOADED, STOWED, CARRIED AND DISCHARGED STRICTLY IN ACCORDANCE WITH NATIONAL/INTERNATIONAL REGULATIONS AND IMO CODES AND CHARTERERS WARRANT THAT THE LOADING/ DISCHARGING OPERATION SHALL FULLY COMPLY WITH THE LOCAL AND INTERNATIONAL REGULATIONS REGARDING THE POLLUTION AND/OR ENVIRONMENTAL CONTROL OR SIMILAR RESTRICTIONS BY THE LOCAL AUTHORITIES. CHARTERERS ARE FULLY RESPONSIBLE FOR ANY FINES, COSTS, EXPENSES, TIME AND ALL CONSEQUENCES FOR NOT COMPLYING WITH THE AFORESAID REGULATIONS.

CHARTERERS ARE TO WASH CLEAN ALL HOLDS BY FRESH WATER IMMEDIATELY AFTER COMPLETION OF DISCHARGING AND TO THOROUGHLY REMOVE RESIDUES AND CEMENT DUST IN HOLDS AT CHARTERERS TIME AND EXPENSE TO MASTERS SATISFACTION. ANY EQUIPMENT REQUIRED FOR SUCH CLEANING TO BE SUPPLIED BY CHARTERERS.

BILGE WATER NOT TO BE DISCHARGED THROUGH SHIPS BILGE LINES BUT TO BE PUMPED OVER BOARD BY SUBMERSIBLE  PUMP SUPPLIED BY CHARTERERS. BILGE WELL TO BE SUITABLY PROTECTED BY CHARTERERS TO MASTERS SATISFACTION.

THE CREW SHALL CLEAN AND WASH DOWN VESSELS HOLDS IF REQUIRED BY CHARTERERS AND PERMITTED BY LOCAL REGULATIONS DURING THIS TIME CHARTER AND CHARTERERS TO PAY OWNERS US$ 500 PER HOLD FOR THIS HOLD CLEANING. THIS CLEANING SHALL BE PERFORMED WHILST VESSEL IS ENROUTE FROM LAST DISCHARGE PORT TO NEXT LOADING PORT PROVIDED THE DURATION OF SUCH VOYAGE IS SUFFICIENT AND IT CAN BE SAFELY DONE IN GOOD WEATHER CONDITIONS. OWNERS ARE NOT TO BE RESPONSIBLE FOR ANY FAILURE OF VESSELS PASSING SUBSEQUENT CLEANLINESS TEST.

5

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:40pm P012/076

**SECOND ORIGINAL**

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



**SSY**
SIMPSON SPENCE & YOUNG
N E W   Y O R K

#### CLAUSE 37: CONTINUED:

BULK CEMENT TO BE LOADED ONLY THROUGH EXISTING CEMENT HOLES ON HATCHCOVERS AND TO BE DISCHARGED ONLY USING SCREW TYPE PNEUMATIC EVACUATORS OR SIMILAR NON-POLLUTING MEANS AND NOT USING VESSEL'S CRANES/GRABS/SLINGS."

FERTILIZERS/GRAINS TO AUSTRALIA ARE ALLOWED PROVIDED VESSEL'S TRADING HISTORY IS ACCEPTABLE TO THESE TRADES. NOTWITHSTANDING ANYTHING STATED IN THIS CHARTER PARTY TO THE CONTRARY, OWNERS ARE NOT TO BE RESPONSIBLE FOR ANY FAILURE, FOR WHATEVER REASON, OF VESSEL'S PASSING PRE-LOADING HOLDS INSPECTION. IF VESSEL AND/OR CARGO IS REJECTED OR HELD BACK AT DISCHARGE PORT(S) FOR QUARANTINE OR FOR ANY REASON WHATSOEVER, CHARTERERS ARE TO BE FULLY RESPONSIBLE FOR ALL CONSEQUENCES ARISING THEREFROM AND VESSEL TO REMAIN FULLY ON HIRE.

#### CLAUSE 38: CERTIFICATES/VACCINATIONS:

Owners are obliged to deliver and maintain throughout the currency of this Charter-party the vessel, her crew and anything pertaining hereto supplied with up-to-date and complete certificates (including Oil Pollution Certificates), approvals, equipment and fittings, enabling the vessel and her crew to trade within the trading limits and to load, carry and discharge all cargoes permitted under this Charter-party.

Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available onboard, enabling the vessel to obtain radio free pratique.

If requested, Owners to provide Charterers with copies of any certificates/approvals.

Any time lost and all extra directly related expenses resulting from Owners' non-compliance with the above to be for Owners' account and may be deducted from hire.

#### CLAUSE 39: CREW SERVICE (SEE ALSO CLAUSE 79):

With reference to Clause 8 of this Charter-party 'customary assistance' shall include:

a) All opening and closing of hatches, when and where required, if permitted by local regulations.

b) Raising and lowering of derricks and rigging cranes, if fitted, and/or gangways in preparation for loading and discharging.

6

JAMES HOOD LLC          Fax:2038319757          Jan 25 2008 12:40pm   P013/076

SECOND ORIGINAL

## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4TH, 2003



### CLAUSE 39: CONTINUED:

c) Shaping up vessel's hold/hatches and cranes, if fitted, as much as possible prior arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations subject to weather conditions and the safety of the crew.

The crew bonus for lashing and/or unlashing of cargo is not included in the hire and overtime. The actual quantity of the crew bonus should be discussed by the Master and Charterers reasonably and amicably.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the standard of services from Officers and Crew required under this Charter-party.

### CLAUSE 40: DEDUCTIONS:

The Charterers may deduct from the Charter hire any amount disbursed for Owners' account. In addition Charterers may deduct from the last hire payment the reasonable estimated expenses, but not more than US$ 500 per port call where Owners have not appointed Owners' protecting agents, incurred by Charterers for Owners' account, not withstanding that vouchers may not then have reached Charterers for submission to Owners.

### CLAUSE 41: DELIVERY OF CARGO AGAINST L.O.I:

In case Original Bill(s) of Lading not available at discharge port Owners agree to release the entire cargo against a single 'Letter of Indemnity' (as per Owners' P&I Club wording) signed by Charterers only. (See also Clause 72).

No freight pre-paid Bills of Lading and/or thorough Bills of Lading to be issued during this Charter. Charterers are also not permitted to issue switch Bills of Lading.

Charterers will make every endeavour to ensure that original Bill of Lading is available at disport and presented to master on arrival of the vessel at disport. However, if original Bill(s) of Lading is not available then Charterers to inform owners accordingly in advance and fax L.O.I in Owners PNI club during signed by Charterers together with a copy of The Bills of Ladingl before arrival of the vessel at the disport. Charterers shall Indemnify Owners against all consequences arising from Owners confirming to Charterers request in releasing cargo against L.O.I instead of original bills of lading. Original L.O.I to be couriered to Owners. Any delay in commencement of discharge due to non-submission of Bills of Lading or L.O.I in accordance to agreed terms herein to be for Charterers account including expenses and consequences thereof and vessel to remain on hire throughout such waiting period. Original Bill(s) of LAding to be forwarded to Owners as soon as available.

SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



### CLAUSE 42: DELIVERY/REDELIVERY TIME:

Laytime to be in local time, time on hire (from delivery to redelivery) to be converted to GMT.

### CLAUSE 43: DESCRIPTION CLAUSE:

M/V PRABHU PUNI
SINGAPORE FLAG, BUILT 1992
43,595 MT DWT ON 11.323 METRES SSW
CLASS DNV +1A1 BC, ISM CERTIFIED
ISM CERTIFIED / OWNERS/MANAGERS ISO 9002 CERTIFIED
LOA/LBP/BEAM : 185.90/177.0/30.40 MTRS.
5 HO/5 HA , (HYDRAULICALLY OPERATED END FOLDINGTYPE STEEL HATCH COVER)
HATCH SIZES : NO.1: 19.20 X 15.30 MTRS. NOS.2-5 20.80 X 15.30 M
4 ELECTRO HYDRAULIC CRANES OF 25 MT EACH
4     GRABS OF 8/5 CU.MTRS

SPEED/CONSUMPTION :

BALLAST : ABT 14.5 (K) ON ABT 26.3  MT  IFO (380 CST) + ABT 0.5 MT MDO AT SEA
LADEN : ABT 13.5 (K) ON 27.3 MT IFO (380 CST) + ABT 0.5 MT MDO AT SEA

IN PORT IDLE - ABOUT 1.6 MT  MDO AND  GEAR WORKING - ABOUT 2.7 MT MDO.

VESSEL'S SPEED/CONSUMPTION DESCRIBED AS ABOVE IN ACHIEVABLE IN FAIR WEATHER UNEXCEEDING BEAUFORT SCALE 3.

BUNKER SPECIFICATIONS:
FO : 380 CST/M7 EQUIVALENT TO ISO 8217 : 1987 - RMG 35 EQUIVALENT TO BS 89 +
MAXIMUM ALUMINA   30 PPM AND MAXIMUM SILICON   30 PPM + SHELL HOT
FILTRATION TEST MAXIMUM 0.10 MDO : DIST MDO/M2 EQUIVALENT TO ISO 8217:
1987 - DMB
GRAIN/BALE : 53,593.7/52,269.5 M3
GRT/NRT 25905/13656
PANAMA NRT 21546
TPC : 49.6 K TONS ON FULL DRAFT
VESSEL EQUIPPED WITH 4 PEINER DUAL SCOOP MOTOR GRABS TYPE MZGL 8000-6-BO.
GRABS EQUIPPED WITH 3 KICK PLATES EACH SIDE IN ORDER TO ADJUST VOLUME 8 CBM TO 5 CBM.

-WLTOHC IN LIGHT BALLAST CONDITION : ABT 13 MTRS (AVERAGE) AND IN FULL BALLAST (NO.3 HOLD FLOODED) CONDITION ABT 10.7 MTRS AVERAGE.

8

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:41pm P015/076

SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



## CLAUSE 43: CONTINUED:

- OWNERS CONFIRM:-
VESSEL IS FULLY ITF COMPLIANT OR EQUIVALENT DURING THIS CHARTER
VESSEL IS FULLY ISM COMPLIANT DURING THIS CHARTER
VESSEL IS CLASSED HIGHEST LLOYDS AND REGISTERED WITH A MEMBER  CLASS
OF THE IACS.
VESSEL IS FULLY GRAIN FITTED ACCORDING SOLAS
OWNERS CONFIRM VESSELS GRABS HAVE SPILL PLATES

ALL ABOVE DETS ABTS

* STANDARD QUESTIONAIRE AS ATTACHED

## CLAUSE 44: DOUBLE BANKING:

Charterers have the right to load and/or discharge on double banking basis or by any
other means available at loading and/or discharge port or place always subject to
Master's reasonable satisfaction any additional equipment/facilities such as fenders
whenever considered necessary by the Master are to be supplied by the Charterers in
their time and at their expense. If at any time during the operation, the Master
considers it unsafe to continue due to adverse weather conditions etc, he may order the
vessel(s) and/or barge(s) away from his vessel or remove his own vessel in order to
avoid prejudicing the safety of the vessel(s). Any additional insurance premium net of all
rebates, if required by vessel's Underwriters to be for Charterers' account. Amount not
to exceed the lowest premium obtainable on the London market.

## CLAUSE 45: HOUSE FLAG/MARKINGS:

The Charterers shall have the liberty of flying their own house flag.

## CLAUSE 46: BOYCOTT:

Owners warrant that the vessel's crew is and will be during the period of this Charter-
party employed under a bonafide union agreement, the standard of which is fully
acceptable to the ITF Unions in all countries not excluded in this Charter-party.

In the event of the vessel being denied or restricted in the use of port and/or loading
and/or discharging facilities or shore labour and/or tug or pilotages assistance or any
other restriction, detention or any loss of time whatsoever due to boycott or arrest of
the vessel or due to government restrictions, all caused by the vessel and/or by reason
of the terms and conditions on which members of the crew are employed or by reason
of any trading of this or any other vessel under same Ownership or operation or control,
the payment of hire shall cease for the time thereby lost and all extra directly related
expenses incurred due to above are to be for Owners' account and may be deducted
from hire. Owners are also responsible for any claim that may be presented by third
party.

9



### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003

## CLAUSE 47: IN LIEU OF HOLD CLEANING:

Charterers shall have the option of redelivering the vessel without cleaning of holds against paying the Owners a lumpsum of US$ 4,500.00 in lieu of such cleaning excluding dunnage removal/disposal.

## CLAUSE 48: INSPECTION:

If the Charterers have dispute in stowage plan, the Charterers and/or their Surpercargo(es) shall have free access to the holds, bunker tanks, sludge, ballast tank, freshwater tanks to check. But such inspection should not be deemed as a condition inspection and cannot result in cancellation or frustration of the Charter-party, except otherwise stipulated in the Charter-party.

## CLAUSE 49: INSURANCE:

Premium for annual war risk insurance on hull and machinery and Officer/crew always to be for Owners' account. Any additional premium in respect of these risks solely arising from the vessel proceeding at the Charterers' request to areas designated as excluded areas by vessel's war risks Underwriters to be for the Charterers' account, however, not to exceed what would have been quoted or charged if the vessel was covered on the London market.

## CLAUSE 50: INTERMEDIATE HOLD CLEANING:

If required by Charterers, provided shore rules permit, intermediate hold cleaning shall be done by the crew at Charterers Time/risk/expenses. The crew will endeavour best in the same efficient manner as if were trading for Owners account to clean the vessel's holds to Charterers satisfaction but vessel/owners not to be held responsible if the holds fail any cleanliness/condition surveys at Load ports and vessel to continue to remain on hire and any cleaning expenses incurred due to hold failure and any costs incurred due to such failure to be for charterers account. Charterers to pay to Owners U.S. $ 650.00 per hold for such cleaning excluding removal/disposal of dunnage/lashing materials.

## CLAUSE 51:

Forklift trucks/bulldozers/grabs/magnets etc, shall be allowed to be used in the holds if necessary, provided always within the vessel's permissible load.

## CLAUSE 52: LOADING OF STEEL:

Steel cargoes to be sufficiently dunnaged/lashed/secured and unlashed/unsecured at Charterers' expense, risk and in their time by Stevedores under the supervision of the Master and up to his satisfaction.

Pre-shipment survey for loading steel cargoes:

JAMES HOOD LLC    Fax:2038319757    Jan 25 2008 12:41pm P017/076

SECOND ORIGINAL

## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4TH, 2003



### CLAUSE 52: CONTINUED:

If loading steel/steel products, P&I Surveyors to be appointed by Owners at Owners cost. Owners will provide Charterers with a copy of the survey report if Owners ordered pre-loading survey as aforesaid and cargo claim presented.

Surveyors remarks, if any, relative to cargo to be endorsed in Mate's receipts and Bill(s) of Lading.

### CLAUSE 53: NOTICES:

Vessel will be deemed delivered to charterers either DLOSP Xingang or upon lifting charterers subs which ever is later irrespective CP Terms cleared or not.

### CLAUSE 54: OFF-HIRE:

Should the vessel put back whilst on voyage by reason of an accident or breakdown, or in the event of loss of time either in port or sea or deviation upon the course of the voyage caused by sickness of or accident to the crew or any person onboard the vessel (other than passengers or Supercargo travelling by request of the Charterers) or by reason of the refusal of the Master or crew to perform their duties, or by reason of salvage, or oil pollution even if alleged, or capture/seizure, or detention by any authority/legal process except if caused by Charterers, the hire shall be suspended from the time of inefficiency until the vessel is again efficient in the same or equidistant position, and voyage resumed therefrom. All extra directly related expenses incurred including bunkers consumed during period of suspended hire shall be for Owners' account.

The Charterers may in their option, partly or wholly, add any off-hire period(s) to the Time Charter period.

During any off-hire period estimated to exceed 8 days, the Owners to give the Charterers not less than 4 days notice of resumption of the service.

If the vessel has been off-hire for a period of more than 30 days, the Charterers are at liberty to cancel the balance of this Charter-party, in which case redelivery shall take place upon dropping last outward sea pilot after vessel being free from cargo, irrespective of redelivery ranges.

### CLAUSE 55: FINANCIAL RESPONSIBILITY IN RESPECT OF POLLUTION:

1. Owners warrant that throughout the currency of this Charter they will provide the vessel's with the following certificates.

   A. Certificates issued pursuant to section 311(P) of the U.S .Federal Water Pollution Control Act as amended (Title 35 U.S. Code, Secton 1321 (P) upto (insert the date upon which such certificate(s) is/are due to expire)

11



## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4TH, 2003

### CLAUSE 55: CONTINUED:

B.  Certificates issued pursuant to Section 1016 (A) of the Oil Pollution Act 1990, and Section 108 (A) of comprehensive environmental response, compensation and liability act 1980, as amended in accordance with part 138 of Coast Guard Regulations 33 CFR, from (indicate the earliest date upon which the Owners may be required to deliver the vessel into the Charter or, if later the date inserted in sub-paragraph (a) above) so long as these can be obtained by the Owners from or by (identify the applicable scheme or schemes).

2.  Notwithstanding anything whether printed or typed herein to the contrary.

   a.  Save as required for compliance with paragraph 91) hereof Owners shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this Charter.

   b.  Charterers shall indemnify Owners and hold them harmless in respect of any loss, damage, liability or expenses (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the Charterers promptly to give alternative voyage orders) whatsoever and however arising which Owners may sustain by reason of any requirements to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other then to the extent provided in paragraph (1) hereof.

   c.  Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which Charterers and/or the holders of any Bill of Lading issued pursuant to this Charter may sustain by reason of any requirements to establish or maintain financial security or responsibility in order to enter remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

3.  Charterers warrant that the terms of this Clause will be incorporated effectively into any Bill of Lading issued pursuant to this Charter.

### CLAUSE 56: ON-OFF-HIRE SURVEY:

At port of delivery, in Owners' time and at last discharge port prior to redelivery, in Charterers' time, a joint on/off-hire bunker and condition survey to be held by a single independent surveyor jointly appointed. Cost of same to be equally shared between Owners and Charterers, vessel only to be off-hire for actual working time lost due to surveys.



### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003

#### CLAUSE 57: PANAMA/SUEZ CANAL:

Owners warrant that the vessel is fitted for the transit of the Suez and the Panama Canal. Should the vessel not meet these or other canal requirements Charterers may suspend hire for all time lost and Owners to pay all expenses resulting form such failures as a consequence thereof.

#### CLAUSE 58: PLANS:

Owners to courier to the Charterers Capacity plan, Deadweight Scale and General Arrangement plan.

#### CLAUSE 59: POWER CLAUSE:

The vessel to supply free of expense to Charterers account 440 volt 3 phase 60 cycles per crane from engine room switchboard. Charterers have the right to fit magnets or other loading/discharging equipment customary to the trade onto vessel's cranes subject to vessel's lifting capacity. Charterers to arrange the outlet/socket/suitable cabtire cables and other necessary fittings at the Charterers' time and expense unless the same on board.

#### CLAUSE 60: PROTECTIVE CLAUSES:

The New Jason Clause, Both-to-Blame Collision Clause, to be read as per standard printing and not be influenced by any mis-typing, the General Paramount Clause, U.S Clause Paramount, Canadian Clause Paramount, Conwartime 1993, P&I Bunkering Clause, U.S Anti Drug Abuse Act 1986 and U.S. Tax Reforms Act 1986, as applicable and attached are all to be considered as part of this Charter-party and all Bill(s) of Lading issued under this Charter shall be subject to all said Clauses.

The USA/Canadian Clause Paramount as applicable, or the Hague Rules as enacted in countries other than the USA or Canada as applicable to be incorporated in all Bill(s) of Lading.

#### CLAUSE 61: PUNCTUAL PAYMENT:

Referring to Lines 60 and 61: Where there is any failure to make 'punctual and regular payment' due to errors or omission of Charterers' employees, bankers or Agents or otherwise for any reason where there is absence of intention to fail to make payment as set-out, Charterers shall be given by Owners 3 banking days notice to rectify the failure, and where so rectified the payment shall stand as punctual and regular payment.

#### CLAUSE 62: SMUGGLING:

Owners to be free from responsibility for any consequence owing to smuggling unless caused by vessel's Officers and/or crew, or Owners' servants.

13

**RIDER CLAUSES TO THE M/V "PRABHU PUNI"**
**OCEANTRADE CORPORATION**
**CHARTER PARTY DATED NOVEMBER 4TH, 2003**



### CLAUSE 63: STEVEDORE DAMAGE:

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 24 hours after any damage is discovered. Such notice to specify the damage detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

a. In case of any and all damages affecting the vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the vessel, the Charterers shall immediately arrange for repairs of such damages at their expenses and the vessel is to remain on-hire until such repairs are completed and if required passed by the vessel's classification society.

b. Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with Owners work. In such case no hire and/or expenses will be paid to the Owners except and in so far as the time and/or the expenses required for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners work.

If extent of damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with (a), and (b) as above and details may follow when examination possible.

If at time of redelivery there remains outstanding damage for which Charterers may be liable but which without affecting the seaworthiness and/or trading capabilities of the vessel, can be repaired by Owners at any convenient time after redelivery, Owners undertake to accept redelivery under Clause No.1 of this Charter-party.

If redelivery is accepted as above, Charterers undertake to reimburse Owners cost of repairs as ascertained later by mutually agreed surveyor when repairs carried out and liabilities established.

However, damage for which Charterers may be liable affecting vessel's seaworthiness or cargo or class and/or trading capabilities is to be repaired by Charterers in their time and at their expense upon occurrence and in any event before redelivery of the vessel.

### CLAUSE 64: TAXES:

Any taxes on charter hire levied by country of vessel's registry to be on Owners' account. All other taxes to be on Charterers' account.

14

SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4ᵀᴴ, 2003



#### CLAUSE 65: TRADING EXCLUSIONS:

Charterers have option to break IWL against paying of extra insurance on hull and machinery as per receipted invoice from Underwriters. Charterers to obtain Owners' prior permission for the same which not be unreasonably withheld.

If any place(s) or port(s) become war like operations after vessel is at that particular place(s) or port(s) 'Conwartime Clause 1993' shall apply. War like conditions as defined by country flag/administration/Owners' Underwriters.

If war or hostilities break out between any two or more of the following countries or supranational organizations U.S.A, Great Britain, Australia, Japan, France, former USSR, China, Germany, Norway, Denmark and all countries of call under this Charter-party, the United Nation or NATO both Owners and Charterers shall have the right to cancel this charter whereupon the Charterers shall redeliver the vessel to the Owners, if she has cargo on board after discharge thereof at destination, or if debarred from reaching or entering it, at a near open and safe port as directed by the Charterers, or if she has no cargo on board, at a port at which she stays or if at sea, at a near and safe port as directed by the Charterers. In all cases hire shall be paid until the vessel's redelivery.

#### Country Exclusions:

VESSEL NOT TO TRADE WITH PAKISTAN, BANGLADESH, SYRIA, YEMEN (NORTH AND SOUTH), ISRAEL AND ITS CONTROLLED TERRITORIES, IRAQ, LEBANON, LIBERIA, ALGERIA, SUDAN, ZAIRE, GEORGIA INCLUDING ABKHAZIA, LIBYA, ETHIOPIA, GHANA, TURKISH OCCUPIED CYPRUS, SOMALIA, ANGOLA INCLUDING CABINDA, NICARAGUA, NIGERIA, MAURITANIA, CAMBODIA (KAMPUCHEA), BURMA,  ALBANIA, ALL EX-REPUBLICS OF YUGOSLAVIA, CUBA, HAITI ISLANDS, NORTH KOREA, NAMIBIA, RUSSIAN/CIS PACIFIC PORTS, (ALL OTHER CIS PORTS ARE ALLOWED), UKRAINE, GREAT LAKES, SOUTH AFRICA AND ALL COUNTRIES BANNED BY UNITED NATIONS OR COUNTRIES AGAINST WHOM UN SANCTIONS MAY BE IMPOSED FROM TIME TO TIME. VESSEL NOT TO SAIL DIRECT BETWEEN PRC AND TAIWAN AND VICE VERSA. CHARTERERS WARRANT THAT THE VESSEL WILL NOT BE ENGAGED IN ANY TRADE WHICH WOULD RESULT IN VESSEL BEING BLACK LISTED BY ANY COUNTRY. VESSEL NOT TO BE SUB CHARTERED TO COMPANIES BASED IN ABOVE COUNTRIES. VESSEL NOT TO TRADE AREAS/PORTS WHERE WAR/WARLIKE CONDITIONS PREVAIL. IN CASE VESSEL TRADED IN AREAS WHERE AS PER VESSEL'S HNM UNDERWRITERS ADDITIONAL WAR RISK PREMIUM BECOMES PAYABLE THEN SAME TO BE FOR CHARTERERS ACCOUNT.
VESSEL TO BE TRADED IN LAWFUL TRADES ALWAYS VIA SAFE PORT(S), SAFE BERTH(S), SAFE ANCHORAGE(S), ALWAYS AFLOAT, ALWAYS ACCESSIBLE, ALWAYS WITHIN INTERNATIONAL WARRANTY LIMITS.

## SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



### CLAUSE 65: CONTINUED:

THE VESSEL NOT TO BE ORDERED NOR BOUND TO ENTER ANY ICE BOUND PLACE OR PLACE HAVING ICE ICE-LIKE CONDITIONS OR ANY PLACE WHERE LIGHTS, LIGHTSHIPS, MARKS AND BUOYS ARE LIKELY TO BE WITHDRAWN BY REASON OF ICE/BAD WEATHER ON THE VESSEL'S ARRIVAL OR WHERE THERE IS RISK THAT ORDINARILY THE VESSEL WILL NOT BE ABLE ON ACCOUNT OF ICE TO REACH THE PLACE OR TO GET OUT AFTER LOADING OR DISCHARGING. THE VESSEL NOT TO BE OBLIGED TO FORCE ICE OR FOLLOW ICE BREAKERS. VESSEL IS NOT ICE STRENGTHENED. IF ON ACCOUNT OF ICE THE MASTER CONSIDERS IT DANGEROUS TO REMAIN AT THE LOADING OR DISCHARGING PLACE FOR FEAR OF THE VESSEL BEING FROZEN IN AND/OR DAMAGED, HE HAS THE LIBERTY TO SAIL TO A CONVENIENT OPEN PLACE AND AWAIT THE CHARTERERS FRESH INSTRUCTIONS.

VESSEL ALWAYS TO BE LEFT IN SAFE TRIM / STABILITY AND OTHER CONDITIONS THAT WOULD BE REQUIRED FOR SAFE NAVIGATION WITHIN THE PORT(S) AS WELL AS ON SEA PASSAGE(S).

IN THE EVENT VESSEL'S UNDERWRITERS AND/OR GOVERNMENT OF INDIA ISSUE ANY DIRECTIVES REGARDING INDIAN VESSEL'S TRADING SAME TO BE INCLUDED IN TRADING EXCLUSIONS, OWNERS TO GIVE PROMPT NOTICE OF ANY SUCH DEVELOPMENT TO CHARTERERS.

IF BUNKERING AT SINGAPORE SAME TO BE ARRANGED WITHIN PORT LIMITS ONLY.

SHOULD VESSEL TRADE TO AN AREA WHICH OWNERS WAR RISK INSURERS REQUIRE ANY ADDITIONAL PREMIUM, THE RESULTING COST TO OWNERS OF MAINTAINING IN FORCE THEIR WAR RISKS INSURANCE COVER AND ANY CREW WAR BONUS PAYMENTS UNTIL THE VESSEL LEAVES SUCH AN AREA TO BE FOR CHARTERERS ACCOUNT.
CHARTERERS ARE TO REIMBURSE OWNERS FOR SUCH PREMIUMS AND BONUS PAYMENTS UPON SUBMISSION OF INVOICES AND SUPPORTING VOUCHERS.

### CLAUSE 66: U.S. TRADE – UNIQUE BILL OF LADING IDENTIFIER CLAUSE:

The Charterers warrant that each transport document accompanying shipment of cargo destined to a port or place in the United States of America shall have been endorsed with Unique Bill of Lading Identifier as required by the US Customs regulations (19 CFR Part 4 Section 4.7A) including subsequent changes, amendments or modifications thereto, not later than the first port of call.

16

JAMES HOOD LLC      Fax:2038319157      Jan 25 2008 12:43pm   P023/076

SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



**SSY**

SIMPSON SPENCE & YOUNG

N E W   Y O R K

### CLAUSE 66: CONTINUED:

Non-compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.

Furthermore, all time lost and all expenses incurred including fines as a result of Charterers' breach of the provisions of this Clause shall be for Charterers' account.

Clause 69 - Warranties
Owners warrant that the vessel:

- is not blacklisted by Arab countries nor anywhere else within the agreed trading limits.

- has not traded Cambodia, Cuba, Israel and North Korea.

- is eligible for bunkers in the United States of America, its territories and possessions, in accordance with directive from the United States Department of Commerce, Office of International Trade.

### CLAUSE 67: WATERTIGHT HATCHES:

The Owners guarantee that on vessel's delivery and throughout the currency of this Charter the vessel's hatchcovers are watertight. All hatches are to be carefully attended by the crew to prevent leakage.

### CLAUSE 68: WEATHER ROUTING:

The Charterers may supply an independent weather bureau advice to the Master, during voyages specified by the Charterers and the Master shall comply with the reporting procedure of the weather bureau, except those which are apparently wrong and can be refused by the Master however, the Master remains responsible for the safe navigation and choice of route. Evidence of weather conditions shall be taken from vessel's deck logs and independent weather bureau's reports. In the event of a consistent discrepancy between deck logs and the independent weather bureau's reports, the independent bureau's reports shall be taken as ruling.

### CLAUSE 69:

This Fixture to be kept absolutely private and confidential by all parties and not to be reported.

17

SECOND ORIGINAL

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



#### CLAUSE 70: HOLD CONDITION ON DELIVERY:

Vessel on arrival first loading port to present all holds clean, dry, free from loose rust and previous cargoes and in every respect ready to receive Charterers intended cargo to independent surveyor's satisfaction. Failing such survey vessel shall be off-hire until passed, and any extra cost directly related with such failure shall be for Owner's account.

#### CLAUSE 71:

Bankers

Hire US$ 21,000 daily including overtime, first hire plus value of bunkers on delivery payable within 3 days after delivery of vessel but all additional hire payable every 15 days in advance to Owners nominated bank account as follows:

Owners' bankers:-

KORAM BANK, HEAD OFFICE, SEOUL, KOREA
ACCT NO. 100-00642-439 (USD)
IN FAVOUR OF SEVEN MOUNTAIN SHIPPING CO., LTD."

#### CLAUSE 72: BILL OF LADING:

When and if required one original Bill of Lading being carried onboard against which the cargo may properly be released against instructions received from Shippers/Charterers to named consignee only. It is agreed that Owners are not held liable for any consequence whatsoever by complying with Charterers' request. It is understood that the Bill(s) of Lading issued will be to a named consignee and not 'to order' and cargo will be discharged to this named consignee after verification of identity.

#### CLAUSE 73: ISM:

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter-party, the Owners shall procure that both the vessel and 'the Company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter-party, loss, damage, expense or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM Code shall be for the Owners' account.

#### CLAUSE 74: HAMBURG RULES:

Neither the Charterers nor their agents shall permit the issue of any Bill of Lading, Way Bill or other document evidencing a Contract of Carriage (whether or not signed) on behalf of the Owners or on the Charterers' behalf or on behalf of any Sub Charterers

18

JAMES HOOD LLC       Fax:2039319757        Jan 25 2008 12:43pm P025/076

SECOND ORIGINAL

## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4ᵀᴴ, 2003



### CLAUSE 74: CONTINUED:

incorporating, where not compulsorily applicable - 'The Hamburg Rules' or any legislation imposing liabilities in excess of 'Hague or Hague Visby rules'.

Charterers shall indemnify the Owners against any liabilities, loss or damage, which may result from any breach of the forthcoming provisions of this Clause.

### CLAUSE 75:

In case Charterers require Owners to permit crane drivers to stay onboard (accommodation and lifeboat capacity permitting) during discharge operations and cater them against Charterers paying US$ 7 per man per day. It is clearly understood that the crane drivers will stay on board the vessel only during port stay and not during steaming or shifting from one port to other (due to lifeboat capacity).

### CLAUSE 76:

Charterers' to stem bunkers always conforming to ISO 8217 specs thru major bunker suppliers only.

**O W N E R S**

SEVEN MOUNTAIN SHIPPING CO. LTD.

........................................
Authorized Signature

**C H A R T E R E R S**

*For and on behalf of Oceantrade*
*as per their written authority;*

........................................

**Evan Galanis**
Simpson, Spence & Young New York
AS BROKER ONLY

JAMES HOOD LLC        Fax:2038319757        Jan 25 2008 12:44pm  P026/076
ᏚᏞᎽᎾᎤᏁᎠ ᏫᏁᎥᏫᏁᏁᎯᏞ

### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



#### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of voyage resulting from any cause whatsoever, whether due to negligence or not for which or for the consequences of which the carrier is not responsible, by statute contract or otherwise, the Goods, Shippers, Consignees or Owners of the goods shall contribute with the carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If the salving ship is owned or operated by the carrier, salvage shall be paid for as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and in salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or Owners of the goods to the carrier before delivery.

#### BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter-party falls to be determined in accordance with the Laws of the United States of America, the following Clause shall apply:-

"If the ship comes into collision with another ship as a result of the negligence of he other ship and any act, neglect or default of the Master, Mariner, Pilot or the Servants of the carrier in the Navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carried against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in-charge of any ship or ships or objects other than, or in addition to, the colliding ships, or objects are at fault in respect to a collision or contact."

#### GENERAL PARAMOUNT CLAUSE

This Bill of Lading shall have effect subject to the provisions of any legislation relating to the carriage of goods by sea which incorporates the rules relating to Bills of Lading contained in the International convention, dated Brussels, 25th August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, but nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any

20

## SECOND ORIGINAL
### RIDER CLAUSES TO THE M/V "PRABHU PUNI"
### OCEANTRADE CORPORATION
### CHARTER PARTY DATED NOVEMBER 4TH, 2003



term of this Bills of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent but no further. Nothing in this Bill of Lading shall operate to Limit or deprive the Carrier of any statutory protection or protection or exemption from, or limitation of, liability

### CANADIAN CLAUSE PARAMOUNT

All the terms provisions and conditions of the Canadian Water Carriage of Goods Act, 1936, and of the rules comprising the schedule thereto are, so far as applicable, to govern the contract contained in this Bill of Lading and the Shipowners are to be entitled to the benefit of all privileges, rights and immunities contained in such Act and in the Schedule thereto as if the same where herein specifically set out, if anything herein contained be inconsistent with said provisions, it shall to the extent of such inconsistency and no further be null and void.

The Carrier shall be under no responsibility whatsoever for loss of or damage to goods howsoever and wheresoever occurring when such loss or damage arises prior to the loading on and/or subsequent to the discharge from the Carrier's ship.

### U.S. TAX REFORM 1986 CLAUSE

Any U.S. Gross Transportation Tax as enacted by the United States Public Law 99-514, (also referred to as The U.S. Tax Reform Act of 1986), including later changes or amendments, levied on income attributable to transportation under this Charter-party which begins or ends in the United States, and which income under the laws of the United States is treated as U.S. source transportation gross income, shall be reimbursed by the Charterers.

### U.S. ANTI DRUG ABUSE ACT 1986 CLAUSE FOR TIME CHARTERS.

A) In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986, or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the vessel.

Non-compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the Crew of the vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly.

Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account and the vessel shall remain on hire.

Should the vessel be arrested as a result of the Charterers' non-compliance with the provisions of this Clause, the Charterers shall at their expense take all

21

## RIDER CLAUSES TO THE M/V "PRABHU PUNI"
## OCEANTRADE CORPORATION
## CHARTER PARTY DATED NOVEMBER 4TH, 2003



reasonable steps to secure that within a reasonable time the vessel is released and at their expense put up bail to secure release of the vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the vessel's personnel.

B) In pursuance of the provisions of Sub-Clause (A) above, the Owners and the Charterers warrant that they shall both become signatories to the Sea Carrier Initiative Agreement on signing this Charter-party or on delivery of the vessel under this Charter, whichever is the earlier, and will so remain during the currency of the Charter.

### P & I BUNKER DEVIATION CLAUSE 1948

The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in this Charter and there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks, deep tanks, and any other compartment in which oil can be carried whether such amount is or is not required for the chartered voyage.

### BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERERS, 1993
### CODE NAME: "CONWARTIME 1993"

(1) For the purpose of this Clause, the words:-

(a) "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, Managers or other operators who are charged with the management of the vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

(2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement

22

# EXHIBIT 2

040602-00298293
Received 6/2/2004 9:08:30 AM - ._.<ssyusa@snet.net>
Subject: [JNH] prabhu puni / samsun

Page 1 of 1

User: JNH

FROM: SSY NEW YORK
DATE: 6/2/2004
TIME: 9:00:21 AM


Jim / Jess

Sending below for sake good order:-

QUOTE

RE: MV PRABHU PUNI/SAMSUN

RCVD FOLL MSG FM SUB-CHTRS LAST NIGHT, BEFORE OWNS' MSG.

QTE

Re Prabhu Puni / Owners
----------------------
qte

pls note as ship's grabs was out of order and not in a working
condition vsl could start discharging by only 1 gangs on 1930/27.05.04
disch continued by 1 gangs till 1200/27.05.04 when 2nd grabs was
delivered by master to disch the cargo
since 1200 hrs vsl continue disch by 2 gangs till 1830 hrs
in spite of all effort by ship's crew unfortunately grabs couldn't't
make available properly to continue discharging and observed a lot of
leakage during discharging due to technical problem ,the local agent
and cargo receivers requested master many times to rent shore grabs in
owner's account to continue discharging however no action was taken
place through owners or master, consequently since the port area
was dirty due to cargo leakage the port authority suspended disch
operation at 1830/28.05.04 .
in the other hand port authority threaten if the disch rate not to be
in a right and normal condition no way but to shift the vsl to the
anchorage shortly
therefore in order to avoid further delay and prevent extra cost
sustain to the parties concerned chrts didn't have any choice but to
instruct local agent to rent 4 unit suitable shore grabs at the rate
of usd 1 pmt which we hold owners fully responsible to pay the
relevant charges
we put the charges pertaining to hire of grabs in to the owner's
account and the same to be deducted from next hire payment .
meanwhile need less to say that all time lost due to grabs breakdown
would be considered as off-hire duration.

pls adv owners accly
unqte

UNQTE

BRGDS

UNQUOTE

BRGDS/SSY-NY
203-356-2000
JESSICA L. DILORENZO  AOH: 203-894-1307   MOB: 203-979-6126

# EXHIBIT 3




## SAMSUN LINE CORPORATION

1. OWNERS : OCEANTRADE CORPORATION
2. DELIVERY                    26-Jan-04    14:24 GMT  (22:24LT 26TH JAN)
3. B.O.D         IFO        691.552 MT
                 MDO         60.148 MT
4. TO                        15-Jun-04     02:12 GMT
5. CHARTERED PERIOD          140.4917 DAYS
6. HIRE                      $25,000.00  DIOT

INVOICE DD : 30TH JUN 04

| PARTICULARS | | | | | CHARTERERS | OWNERS |
|---|---|---|---|---|---|---|
| 1. HIRE | | | | | | |
| | 140.4917 DAYS | | X | $25,000.00 | | $3,512,291.67 |
| LESS 2.5% ADD COMM | | | | | $87,807.29 | |
| LESS 1.25% BROKERAGE TO P&A | | | | | $43,903.65 | |
| 2. BOD | | | | | | |
| IFO | 691.552 | MT | X | $190.00 | | $131,394.88 |
| MDO | 60.148 | MT | X | $290.00 | | $17,442.92 |
| BOR | | | | | | |
| IFO | 712.404 | MT | X | $190.00 | $135,356.76 | |
| MDO | 61.668 | MT | X | $290.00 | $17,883.72 | |
| 3. INTERMEDIATE HOLD CLEANING COST FOR FEED PEAS (U$650 PER HOLD) | | | | | | $3,250.00 |
| ILOHC | | | | | | $5,000.00 |
| 4. OFF HIRE DUE TO GRAB MALFUNCTION | | | | | | |
| TIME LOSS | 1.471 | DAYS | X | $25,000.00 | $36,775.00 | |
| LESS 3.75 | | | | | | $1,379.06 |
| BUNKER CONSUM | 2.354 | MT | X | $290.00 | $682.54 | |
| 5. OWNERS EXPENSES AT BANDA ABBAS | | | | | $10,000.00 | |
| SHORE GRAB HIRE (36,640MT AT USD 1.0) | | | | | $36,640.00 | |
| 6. CABLE/VICTUALLING/ENTERTAINMENT EXPS (USD 1,250 P/M) | | | | | | $5,853.82 |
| 140.491667 DAYS / 30  X  $1,250 PMPR  =   $5,853.82 | | | | | | |
| 7. BANK CHARGE | | | | | | $198.00 |
| 8. | 1ST HIRE | | | | $510,400.30 | |
| | 2ND HIRE | | | | $361,562.50 | |
| | 3RD HIRE | | | | $361,616.50 | |
| | 4TH HIRE | | | | $361,580.50 | |
| | 5TH HIRE | | | | $361,580.50 | |
| | 6TH HIRE | | | | $361,580.50 | |
| | 7TH HIRE | | | | $364,830.50 | |
| | 8TH HIRE | | | | $361,580.50 | |
| | 9TH HIRE | | | | $212,742.70 | |
| | 10TH HIRE | | | | $37,820.35 | |
| TOTAL | | | | | $3,664,343.81 | $3,676,810.35 |
| BALANCE DUE TO OWNERS | | | | | $12,466.54 | |
| G. TOTAL | | | | | $3,676,810.35 | $3,676,810.35 |

# EXHIBIT 4

BULKAMERICA CORPORATION
137 Rowayton Avenue
Suite 420
Rowayton, Connecticut
USA 06853

As Agents for
OCEANTRADE CORPORATION


| | |
|---|---|
| TO: | EVAN GALANIS |
| COMPANY: | SSY-NY |
| E-MAIL: | SSYUSA@SNET.NET |
| DATE: | July 1, 2004 |
| NUMBER OF PAGES: | 2 |

## REVISED - PRELIMINARY FINAL HIRE STATEMENT


SEVEN MOUNTAIN / OCEANTRADE
M/V PRABHU PUNI
C/P DTD 11/04/2003

| | | | | | | |
|---|---|---|---|---|---|---|
| HIRE PAYMENT #14: | FROM:<br>TO: | 28-Nov-03<br>15-Jun-04 | 00:35 HRS GMT<br>02:12 HRS GMT | | | |
| 200.067361 DAYS @ | $21,000 | | | | USD | 4,201,414.58 |
| ADDRESS COMMISSION | | @ | 3.75% | | USD | (157,553.05) |
| BROKERAGE COMMISSION | | @ | 2.50% | | USD | (105,035.36) |
| | | | | | USD | 3,938,826.17 |
| | | | | | | |
| OFF-HIRE #1: | FROM:<br>TO: | 28-Nov-03<br>29-Nov-03 | 04:00 HRS GMT<br>11:18 HRS GMT | | | |
| REMOVAL OF HOLD CLEANING RESIDUES | | | | | | |
| 1.30417 DAYS @ | $21,000 | | | | USD | (27,387.50) |
| ADDRESS COMMISSION | | @ | 3.75% | | USD | 1,027.03 |
| BROKERAGE COMMISSION | | @ | 2.50% | | USD | 684.69 |
| IFO | 1.670 | @ | $175.00 /MT | | USD | (292.25) |
| MDO | 2.200 | @ | $260.00 /MT | | USD | (572.00) |
| | | | | | USD | (26,540.03) |
| | | | | | | |
| OFF-HIRE #2: | | | | | | |
| GRAB MALFUNCTION | | | | | | |
| 1.44917 DAYS @ | $21,000 | | | | USD | (30,432.57) |
| ADDRESS COMMISSION | | @ | 3.75% | | USD | 1,141.22 |
| BROKERAGE COMMISSION | | @ | 2.50% | | USD | 760.81 |
| BUNKER CONSUMPTION | 2.354 | @ | $260.00 /MT | | USD | (612.04) |
| SHORE GRAB HIRE | | | | | USD | (36,640.00) |
| | | | | | USD | (65,782.58) |

DELIVERY BUNKERS:
**WITHOUT PREDJUDICE - CHARTERERS RESERVE THEIR RIGHT TO REDELIVER WITH AGREED QUANTITIES OF**
**ABOUT 700 MT IFO AND 60 MT MDO OR WITH THE QUANTITY AS ON DELIVERY AT END OF PERIOD.**
**REASON IS AS OF EXCESSIVE DIFFERENCE OF BUNKERS ON DELIVERY.**

| | | | | | | |
|---|---|---|---|---|---|---|
| IFO | 1074.290 | @ | $175.00 /MT | | USD | 188,000.75 |
| IFO<br>(SUPPLIED BY PEGASUS - SUB/CHRTR) | 350.000 | @ | $175.00 /MT | | USD | (61,250.00) |
| MDO | 99.490 | @ | $260.00 /MT | | USD | 25,867.40 |
| MDO<br>(SUPPLIED BY PEGASUS - SUB/CHRTR) | 50.000 | @ | $260.00 /MT | | USD | (13,000.00) |
| | | | | | | 139,618.15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| REDELIVERY BUNKERS: | | | | | | |
| IFO | 712.404 MT | @ | $175.00 /MT | | USD | (124,670.70) |
| MDO | 61.668 MT | @ | $260.00 /MT | | USD | (16,033.68) |
| | | | | | USD | (140,704.38) |

```
INTERIM HOLD CLEANING:
AFTER LIANYUNGANG                                                        USD        3,250.00
AFTER HUELVA                                                            USD        3,250.00
                                                                       USD        6,500.00


HOLD CONDITION:
ILOHC                                                                   USD        4,500.00
                                                                       USD        4,500.00


SURVEYS:
ON-HIRE                                                                 USD
OFF-HIRE                                                                USD
                                                                                   0.00


COMMUNICATION/VICTUALLING/ENTERTAINMENT:
    198.76319 DAYS @      $        1,250                                USD        8,281.80
                                                                       USD        8,281.80


OWNERS ITEMS:
OWNERS EXPENSES     (AWAITING VOUCHERS FROM SUB/CHRTRS BULK MARINE)     USD       (1,045.85)
FRESH WATER                                                             USD         (500.00)
TNT EXPENSE                                                             USD          (75.00)
ESTIMATED OWNERS EXPENSES AT BANDAR ABBAS (Per Samsun statement attached) USD   (10,000.00)
                                                                       USD      (11,620.85)


REMITTANCES:
CH #1:      2-Dec-03                                                    USD     (513,743.00)
CH #2:      12-Dec-03                                                   USD     (292,000.00)
CH #3:      29-Dec-03                                                   USD     (269,343.00)
CH #4:      9-Jan-04                                                    USD     (295,938.00)
CH #5:      27-Jan-04                                                   USD     (295,938.00)
CH #6:      10-Feb-04                                                   USD     (298,612.00)
CH #7:      25-Feb-04                                                   USD     (295,937.00)
CH #8:      11-Mar-04                                                   USD     (295,938.00)
CH #9:      26-Mar-04                                                   USD     (295,937.00)
CH #10:     9-Apr-04                                                    USD     (295,938.00)
CH #11:     23-Apr-04                                                   USD     (295,937.00)
CH #12:     10-May-04                                                   USD     (295,938.00)
CH #13:     25-May-04                                                   USD     (299,187.00)
CH #14:     23-Jun-04                                                   USD        36,211.57
            30-Nov-04                                                   USD        74,230.00
                                                                       USD    (3,929,944.43)


DUE TO CHARTERERS (IE OVERPAYMENT BY OCEANTRADE)                        USD       (76,866.15)
```

```
UBS (THE UNION BANK OF SWITZERLAND)
ZURICH HEAD OFFICE   ZURICH, SWITZERLAND
SWIFT ADDRESS:       UBSWCHZH80A
FOR FURTHER CREDIT: UBS AG
                    BAARSTRASSE 14A
                    ZUG, SWITZERLAND  6301
ACCOUNT NO.:        273-245603.60Y
FOR CREDIT TO:      SEA VENTURES CORPORATION
REFERENCE:          M/V PRABHU PUNI - SEVEN MOUNTAIN - C/P DTD 11/04/2003
```

```
BEST REGARDS,
BULKAMERICA CORPORATION
AS AGENTS ONLY
```